IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED

NOV - 3 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA        )
                                )
v.                              )        Criminal No. 3:07CR310–HEH
                                )
TORRY T. LEWIS,                 )
                                )
        Petitioner.             )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Petition In Part)

Torry T. Lewis ("Petitioner"), a federal inmate proceeding *pro se*, filed this motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Government has

responded, and Petitioner has replied. The matter is ripe for judgment.

## I. BACKGROUND

On November 26, 2007, Petitioner pleaded guilty to conspiracy to distribute and

possess with intent to distribute five kilograms or more of cocaine hydrochloride. On

February 26, 2008, this Court sentenced Petitioner to a 288-month term of imprisonment.

The Court signed Petitioner's Judgment and Commitment Order on February 28, 2008.

On March 6, 2009,[1] Petitioner filed this motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255. Petitioner raises two grounds for relief:

---

[1] Pursuant to *Houston v. Lack*, 487 U.S. 266, 276 (1988), an inmate's motion is deemed
filed on the date it is placed in the prison mail system.

Claim 1:     Petitioner received constitutionally ineffective assistance
             because Petitioner's attorney (a) operated under a conflict of
             interest, (b) failed to file an appeal after being instructed to do
             so, (c) misadvised Petitioner of his potential sentence and
             induced his guilty plea, (d) failed to object to various sentencing
             factors, and (e) failed to file a motion to suppress the
             unconstitutional traffic stop.

Claim 2:     One of Petitioner's predicate offenses for his career offender
             enhancement is invalid.

Petitioner's § 2255 motion is sworn under penalty of perjury. For the reasons explained

below, Claims 1(a), 1(c), 1(d), 1(e), and 2 will be dismissed. The Court will refer Claim

1(b) to a United States Magistrate Judge for further proceedings.

## II. ANALYSIS

### A.    Claim 1: Alleged Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the two-prong standard

articulated in *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). First, Petitioner

must establish that counsel's performance was constitutionally defective. *Id.* at 686–87.

In so doing, Petitioner must overcome the "'strong presumption' that counsel's strategy

and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v.

Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

Second, Petitioner must show that counsel's deficient performance actually prejudiced his

defense. *Strickland*, 466 U.S. at 694–95; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d

1290, 1297 (4th Cir. 1992) ("The defendant bears the burden of proving *Strickland*

prejudice."). Prejudice requires a defendant to "show that there is a reasonable

2

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a petitioner fails to satisfy either prong of the *Strickland* test, his claim for ineffective assistance of counsel fails, and the Court is not obliged to address the other prong. *Id.* at 697, 700.

### 1.    Claim 1(a):  Conflict of Interest

In Claim 1(a), Petitioner contends that he received constitutionally ineffective assistance of counsel because his attorney was operating under a conflict of interest. Petitioner contends that when he was detained pre-trial, Attorney Wayne Morgan visited Petitioner and explained that he had been retained to represent Petitioner. According to Petitioner, "Morgan has never identified any individual as the source of payment other than an 'Attorney' from the state of New Jersey." (§ 2255 Mot. 7.) Petitioner alleges that Morgan told Petitioner that Petitioner "would be better situated with Morgan's representation, private counsel, than with the representation of court appointed attorney or federal defender." (§ 2255 Mot. 7 (all errors in original).) According to Petitioner, Morgan informed Petitioner that one of Petitioner's codefendants was represented by a private attorney who was Morgan's close friend. Petitioner asserts that Morgan may have been hired to protect the interest of somebody other than Petitioner. Petitioner suggests that this possible conflict of interest encouraged Morgan to dispense with filing a motion

3

to suppress, or might have persuaded Morgan to force Petitioner into a guilty plea instead of going to trial.

Respondent submitted Morgan's affidavit. Morgan swears that he was hired by a woman named Michelle Jones who identified herself as Petitioner's friend. Morgan satisfied himself that the funds for representation came from Petitioner's family, and Petitioner confirmed this for Morgan. Morgan asserts that he never indicated that his services were superior to that of an appointed attorney. Morgan avers that he did not file a motion to suppress because Petitioner insisted on pleading guilty. Morgan quotes Petitioner as saying, "I am a soldier and I will take the blame." (Resp. § 2255 Mot. Ex. 3, at 3.)

The Sixth Amendment[2] guarantee of effective assistance of counsel "'requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation.'" *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) ("*Nicholson I*") (quoting *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991)). "When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), instead of that articulated in *Strickland*." *Id.* (citations and parallel citations omitted). Specifically, "in order to prevail on an actual conflict of interest claim, [the petitioner must show] that (1)

---

[2] "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend VI.

4

petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" *United States v. Nicholson*, 611 F.3d 191, 195 n.2 (4th Cir. 2010) ("*Nicholson II*") (quoting *Sullivan*, 446 U.S. at 348.) "If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief." *Id.* at 205 (citing *Sullivan*, 446 U.S. at 349–50).

Nevertheless, "[a]nalysis of claims of actual conflicts of interest frequently do not proceed in two distinct steps; rather '[t]he two requirements . . . are often intertwined.'" *Jones v. Polk*, 401 F.3d 257, 267 (4th Cir. 2005) (second alteration and omission in original) (quoting *Tatum*, 943 F.2d at 375)). This is so because an actual conflict of interest means "a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, the Supreme Court emphasized that "the *Sullivan* standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* at 172 n.5; *see Nicholson II*, 611 F.3d at 195 n.2.

To establish a conflict of interest, Petitioner must demonstrate that his and Morgan's "'interests diverged with respect to a material factual or legal issue or to a course of action.'" *Nicholson II*, 611 F.3d at 215 (quoting *Nicholson I*, 475 F.3d at 249). To establish an adverse effect, Petitioner must satisfy the standard announced in *Mickens*

*v. Taylor*, 240 F.3d 348 (4th Cir. 2001). *Nicholson I*, 475 F.3d at 251–52 (citing *Mickens*,

240 F.3d at 361, *aff'd*, 535 U.S. 162 (2002)).

> First, the petitioner must identify a plausible alternative defense strategy or
> tactic that his defense counsel might have pursued. Second, the petitioner
> must show that the alternative strategy or tactic was objectively reasonable
> under the facts of the case known to the attorney at the time of the attorney's
> tactical decision. In the language of *Tatum,* the petitioner must show that the
> alternative strategy or tactic was "clearly suggested by the circumstances."
> *Tatum*, 943 F.2d at 376. Finally, the petitioner must establish that the defense
> counsel's failure to pursue that strategy or tactic was linked to the actual
> conflict.

*Mickens*, 240 F.3d at 361.

Petitioner does not satisfy the *Mickens* standard. Petitioner has not identified a

factual or legal issue, or a course of action, with which Petitioner's interests diverged

from Morgan's. Nor does Petitioner suggest a defense strategy or tactic that Morgan

might have pursued. Although Petitioner mentions a motion to suppress, Petitioner offers

no indication that such motion was objectively reasonable given the facts known to

Morgan, let alone that Morgan refused to file it because he labored under a conflict of

interest.[3] Finally, Petitioner fails to establish that an actual conflict existed. Because

Petitioner's assertion of a conflict of interest is mere speculation, Claim 1(a) will be

dismissed.

---

[3] Further discussion regarding the motion to suppress is found *infra*, Part II.A.5.

### 2.    Claim 1(b):  Failure to File an Appeal

Petitioner asserts that, on the day of sentencing, Morgan told Petitioner that Petitioner's codefendant received a sentence of 327 months.  According to Petitioner, Petitioner said to Morgan that if he "'get[s] the career offender enhancement [he] want[s] [Morgan] to appeal.'" (§ 2255 Mot. 8.)  Petitioner avers that Morgan responded, "'We'll see what happens.'" (§ 2255 Mot. 8.)  After the judge handed down the sentence, Petitioner swears he instructed Morgan to file an appeal.  Petitioner states that when he returned to jail, "he was unable to contact counsel [M]organ to inquire about his appeal." (§ 2255 Mot. 8.)  Petitioner asserts that Morgan did not return Petitioner's family members' phone calls, and that Petitioner did not speak to Morgan after sentencing.

In Morgan's affidavit, Morgan swears, "Mr. Lewis was advised of his right to appeal and never told me to do so.  He advised me that I was no longer needed as his attorney." (Resp. § 2255 Mot. Ex. 3, at 2.)

An attorney's failure to file a requested appeal is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–86 (2000).  The United States Court of Appeals for the Fourth Circuit holds that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v.*

*Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).[4] The Fourth Circuit has instructed that "when a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed." *Id.* at 272. That is the case here.

Claim 1(b) will be referred to the Honorable M. Hannah Lauck, United States Magistrate Judge, for all further proceedings including an evidentiary hearing, if necessary. The record will be expanded under Rule 7 of the Rules Governing § 2255 Motions. The record will be expanded to include documents as described in the accompanying Order.

### 3.    Claim 1(c):  Advice Regarding Potential Sentence

Petitioner contends that, on November 19, 2007, Morgan advised Petitioner that the sentence Petitioner could expect was between 108 and 135 months. Petitioner asserts that this representation induced Petitioner's November 26, 2007 guilty plea. Petitioner states that he would have proceeded to trial if he had received better advice regarding his potential sentence.

Petitioner's claim is foreclosed by his representations during his plea colloquy. During Petitioner's plea colloquy, Petitioner satisfied the Court that he was aware that the mandatory minimum sentence in his case was ten years and the maximum was life. (Nov.

---

[4] Petitioner waived his right to appeal in his plea agreement. (Plea Agreement (Dk. No. 32) ¶ 6.) During his oral guilty plea, Petitioner also acknowledged that he may not appeal. (Nov. 26, 2007 Tr. 12, 16–17.)

26, 2007 Tr. 13–15.) The Court explained to Petitioner that Morgan's advice to Petitioner

was based only on an educated estimate. The Court further explained that Morgan could

not precisely know the sentence Petitioner would receive because the sentence would be

based on how the Probation Office prepared the sentencing guidelines and how the Court

ruled on any objections to that assessment. Because the Court properly informed

Petitioner of the potential sentence he faced and that he could not rely upon any estimate

provided by counsel, Petitioner "could not be prejudiced by any misinformation his

counsel allegedly provided him." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).

Accordingly, Claim 1(c) will be dismissed.

### 4.   Claim 1(d):  Failures at Sentencing

Petitioner contends that Morgan rendered ineffective assistance for failing to

(a) object to a misapplication of the career offender enhancement, (b) object to the

miscalculation of the drug quantity, (c) object to Petitioner's criminal history calculation,

and (d) object to calculation regarding previous sentences of imprisonment.

### a.   Career Offender Enhancement

Regarding the career offender enhancement, Petitioner argues that one of the

predicate offenses used to satisfy the enhancement—a New Jersey state conviction for

possession of a controlled substance within 1,000 feet of a school—cannot satisfy the

career offender enhancement because that crime is not considered a "controlled substance

offense" for purposes of the career offender analysis. A controlled substance offense is

"an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Guidelines Manual ("USSG") § 4B1.2(b) (2007). Petitioner contends that his possession charge does not satisfy this requirement.

Petitioner's conviction, however, was under New Jersey Statutes § 2C:35-7. (PSR ¶¶ 36, 44.) That statute criminalizes both distribution and possession with intent to distribute controlled substances within 1,000 feet of a school. N.J. Stat. Ann. § 2C:35-7. Petitioner's contention that this conviction was a mere possession charge is incorrect.[5] Petitioner's conviction was for a felony controlled substance offense. Accordingly, Petitioner's challenge to his attorney's failure to object to the career offender enhancement will be dismissed.

### b.    Drug Quantity

Regarding the Court's calculation of drug quantity, Petitioner avers that the Court's calculation was based on statements made by Petitioner's codefendant, Darnell Anderson. Petitioner states, "There was no evidence to support an enhancement by the [Probation Office] for a 50–150 kilogram pertaining to [Petitioner]." (§ 2255 Mot. 12 (all

---

[5] The Presentence Report noted that the reference to the crime as a possession crime was likely an error. (PSR ¶ 36.) During sentencing, the Government explained that Petitioner "did distribute drugs within 1,000 feet of a school." (Feb. 26, 2008 Tr. 5.)

errors in original).) Petitioner complains that "[t]he exact amount of kilograms delivered to Anderson by [Petitioner] was never substantiated on any factual basis." (§ 2255 Mot. 12.) Petitioner attempts to determine the drug quantity with which he may be attributed by extrapolating the quantities to which Anderson admitted trafficking over time. Petitioner concludes that he should be responsible for between fifteen and fifty kilograms, not between fifty and 150.

Petitioner's assertion is foreclosed by his sworn statements during his plea colloquy. During the plea colloquy, Petitioner confirmed for the Court that he agreed to plead guilty to conspiracy "to distribute at least 50-kilograms of cocaine hydrochloride and less than 150-kilograms." (Nov. 26, 2007 Tr. 9–10.) During sentencing, the Government proffered that Petitioner delivered sixty kilograms of cocaine. (Feb. 26, 2008 Tr. 4.) Later in the same proceeding, Petitioner accepted responsibility for his actions, and the Court reminded Petitioner of the amount of cocaine he had trafficked:

MR. LEWIS:   I just - - I want to apologize to the Court and to my family for everything that I did. And I just want to mention that I made mistakes in my past that are being used against me now. And that was over 12 years ago. And since those mistakes that I've made, this is the first time I've been in trouble with the law.
I just chose - - I'm accepting responsibility for what I did. I can't blame nobody else for what I did. That's it, Your Honor.

11

THE COURT:          All right.  Well, Mr. Lewis, the amount of cocaine that you brought into the Richmond area, well over 100 pounds, touched the lives of an awful lot of people here.

(Feb. 26, 2008 Tr. 7–8.)

Petitioner is bound by his sworn statements during his plea hearing that he was responsible for conspiracy to distribute between fifty and 150 kilograms of cocaine.  The Fourth Circuit has admonished that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).  The Court finds Petitioner's insinuation that he is not guilty of conspiracy to distribute between fifty and 150 kilograms of cocaine "palpably incredible and patently frivolous or false." *Id.* at 221 (internal citations and quotations omitted).  Accordingly, Petitioner's challenge to his attorney's failure to object to the drug quantity will be dismissed.

### c.     Criminal History Calculation

Petitioner contends that his attorney should have challenged the Court's calculation of Petitioner's criminal history because "[t]he two prior sentences used to calculate [P]etitioner's criminal history were both imposed on the same day, plead[ed] to in the same plea agreement[,] and sentenced in front of the same judge." (§ 2255 Mot.

12

13.) Petitioner argues that Amendment 709 to the U.S. Sentencing Guidelines Manual requires these two sentences to merge into one.

Respondent all but ignores Petitioner's argument. Respondent merely avers that a "prisoner cannot challenge facially valid prior convictions used to enhance his current federal sentence except on the ground that the prior conviction was obtained in violation of his right to counsel." (Resp. § 2255 Mot. 12.) Respondent's argument is inapposite. Petitioner is not challenging the validity of the underlying convictions. Rather, he argues that, because he was convicted and sentenced simultaneously for them, that they should merge into a single offense for his criminal history calculation.

Nevertheless, Petitioner's reliance on Amendment 709 is misplaced. Amendment 709, effective November 1, 2007, as is pertinent here, has been codified as USSG § 4A1.2(a)(2). USSG App'x C, Amend. 709 (providing effective date). Petitioner cites § 4A1.2(a)(2) for the proposition that "[i]f there is no intervening arrest, prior sentences are counted separately unless . . . (B) the sentences were imposed on the same day." USSG § 4A1.2(a)(2) (2007).

Petitioner cannot rely on this amendment because, although the Court sentenced Petitioner on two of the offenses used to calculate his criminal history on the same day, *see* PSR Worksheet C (indicating that two of Petitioner's convictions were imposed on November 1, 1996), between those two crimes *there was an intervening arrest, see* PSR ¶¶ 36, 37 (indicating that Petitioner was arrested on June 30, 1996 for the first conviction

and on July 19, 1996 for the second conviction). Because there was an intervening arrest, it was appropriate for these two convictions to be treated separately. *See* USSG § 4A1.2(a)(2) (2007) ("Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . . ."). Accordingly, Petitioner's challenge to his attorney's failure to object to Petitioner's criminal history calculation will be dismissed.

### d. Calculation of Sentences of Imprisonment

Petitioner claims he received ineffective assistance of counsel because his attorney failed to object to the Court adding two criminal history points for a prior New Jersey misdemeanor offense of obtaining or selling a controlled dangerous substance in public. Petitioner asserts that he should not have received two criminal history points for this offense because he did not serve any jail time. Petitioner contends he was already in jail for aggravated assault and possession of a controlled dangerous substance when he was taken to court, pleaded guilty, and sentenced to time served.

Pursuant to USSG § 4A1.1(b) (2007), two points are added to the defendant's criminal history score for each prior sentence of imprisonment of at least sixty days. The misdemeanor charge that Petitioner challenges, *see* PSR Worksheet C, indicates that he was sentenced to a sixty-day term of incarceration. The fact that his sentence may have been credited for time served does not entitle Petitioner to have his criminal history points eliminated. *United States v. Jacobs*, 400 F. App'x 712, 715 (4th Cir. 2010).

14

A "sentence of imprisonment" is defined under the Guidelines as a sentence of incarceration and as the maximum sentence imposed rather than the time the defendant actually served. *See* USSG § 4A1.2(b)(1); *see also* U.S.S.G. § 4A1.2, commentary n.2 ("[T]he length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served."). "When a court gives credit for time served, it affects the length of time the defendant will be required to serve. It does not, however, affect the sentence that is pronounced." *United States v. Ramirez-Perez*, 643 F.3d 173, 176 (6th Cir. 2011). Petitioner's argument that his sentence for time served does not count as a sentence of imprisonment lacks merit. Accordingly, Petitioner's challenge to his attorney's failure to object to Petitioner's sentence of imprisonment calculation will be dismissed because his attorney reasonably eschewed the objection advanced here.

Regarding Petitioner's assertion that the Probation Office may not obtain information from the National Crime Information Center to calculate criminal history, the Court notes that Petitioner offers no authority in support of this proposition. Accordingly, the Court will not consider the merits of this claim.

### 5.   Claim 1(e):  Failure to Move to Suppress

In Claim 1(e), Petitioner contends that his attorney rendered constitutionally ineffective assistance for failing to move to suppress the "unconstitutional stop, arrest, search and seizure of [P]etitioner." (§ 2255 Mot. 19.) Petitioner contends that the stop,

which led to the seizure of money and drugs, was pretextual. Although Petitioner

describes the police surveillance of Petitioner's drug transactions prior to pulling

Petitioner's vehicle over for swerving, Petitioner offers no argument to support his

conclusion that the stop was unconstitutional. (§ 2255 Mot. 16–17.) Petitioner, for

example, does not assert that he was not swerving while driving the vehicle. Although

Petitioner provides plenty of facts regarding the surveillance, stop, and arrest, none of

these facts clearly show how a motion to suppress would be viable.

In order for a motion to suppress to have been successful, Petitioner would have

had to prove that the officer did not have "probable cause or a reasonable suspicion to

stop a vehicle." *United States v. Kellam*, 568 F.3d 125, 136 (4th Cir. 2009). Petitioner

provides no facts on this point. The extent of Petitioner's factual support for his claim is

that "[a]ll reports furbished [sic] by the government clearly established a pretextual stop."

(§ 2255 Mot. 19.) Because Petitioner fails to support his legal conclusions with factual

support, Claim 1(e) will be dismissed. *Raines v. United States*, 423 F.2d 526, 531 (4th

Cir. 1970) (citing *Sanders v. United States*, 373 U.S. 1, 19 (1962); *Eaton v. United States*,

384 F.2d 235, 237 (9th Cir. 1967)).

## B.    Claim 2: Prior Invalid Conviction

Petitioner was sentenced as a career offender based on prior New Jersey state

convictions. Petitioner's argument regarding Claim 2 is as follows: "Mr. Lewis alleges

that these convictions have been or soon to be vacated as being unconstitutional as having

16

been entered in violation of Lewis's right to effective counsel. A copy of the judgment vacating the conviction will be provided." (§ 2255 Mot. 19–20.) Petitioner has provided no further law or fact in support of this claim. *Raines*, 423 F.2d at 531 (citing *Sanders*, 373 U.S. at 19) (permitting dismissal of claims which are not accompanied by supporting factual allegations). Accordingly, Claim 2 will be dismissed.

### III. CONCLUSION

In conclusion, Claims 1(a), 1(c), 1(d), 1(e), and 2 will be dismissed. Claim 1(b) will be referred to the Honorable M. Hannah Lauck, United States Magistrate Judge, for all further proceedings including an evidentiary hearing, if necessary. The record will be expanded under Rule 7 of the Rules Governing § 2255 Motions. The record will be expanded to include documents as described in the accompanying Order.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 2, 2011
Richmond, Virginia

17